Travis SMITH *v.* STATE of Arkansas

CR 88-217B                                        778 S.W.2d 924

Supreme Court of Arkansas
Opinion delivered October 30, 1989

*Jerry M. Rephan*, for appellant.

*Steve Clark*, Att'y Gen., by: *C. Kent Jolliff*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This appeal is from denial of relief sought pursuant to Ark. R. Crim. P. 37. The appellant, Travis Smith, pleaded guilty to first degree murder and illegally manufacturing a controlled substance. He admitted having killed two people who were involved with him in the illegal drug manufacturing operation. He was sentenced to life imprisonment on the murder charge and ten years imprisonment on the drug charge to run concurrently with the life sentence.

Ford Strafaci and Luther Edward Skeels also pleaded guilty to having participated in the murders. Smith raises three points of appeal. While we must reverse and remand to the trial court because of failure to enter written findings with respect to Smith's allegation that his counsel was ineffective, we find no merit in the other points raised.

## 1. The guilty plea

### a. Reference to parole

At Smith's plea hearing, the court explained that the sentence for first degree murder could be life imprisonment. Smith argues, however, that not only did the court fail to inform him that a life sentence carried no possibility of parole, but the court's remarks implied the possibility of parole. He contends the

standards set by the Supreme Court for waiver of the constitutional right to a jury trial in *Boykin* v. *Alabama*, 395 U.S. 238 (1969), and *Brady* v. *U.S.*, 397 U.S. 742 (1970), were thus not met. While those cases point up the gravity of the right involved and seek to assure that it is not given up without awareness of the consequences, they do not hold that the court must explain the law of parole. In *Hill* v. *Lockhart*, 474 U.S. 52 (1985), the Supreme Court expressly refused to go that far.

The argument here, however, is that the court's remarks affirmatively led Smith to conclude he would be eligible for parole. Some of the court's statements were:

> The Court: You understand that if you go to the penitentiary, when a person goes that the Courts here and the lawyers cannot tell you when parole time, if any, is. That is between you and the Department of Correction.
>
> Mr. Smith: (Nodding).
>
> The Court: They have their policies and I am not competent to tell you about parole.
>
> Mr. Smith: Yes Sir.
>
> The Court: Now, there is such a thing as parole, there's good time and all of that but it's not something I know a lot about or that I'm able to advise you and when we talk about a term in the penitentiary, that's all you hear from this Court. If you get anything less than that, that's between you and the Department of Correction. . . .

■ The court's statements were disclaimers. Even if they could be taken as having held out the bare possibility of parole, they would not necessarily have been misleading. While it is true that a sentence to life imprisonment imposed after April 1, 1983, carries no possibility of parole, Ark. Code Ann. § 16-93-607(c)(1) (1987), this court has recognized that such sentences are often commuted, thus making parole a possibility. *Vagi* v. *State*, 296 Ark. 377, 767 S.W.2d 533 (1988).

### b. Consecutive sentencing

■ Smith also contends the court erred in not following Ark. R. Crim. P. 24.4(c) which requires explanation of the

maximum sentence possible, including consecutive sentencing. We find no prejudice resulted from the failure to mention consecutive sentences because the sentences were pronounced to be served concurrently. We do not reverse in the absence of a showing of prejudice. *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 742 (1989); *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985).

### c. Coercion

■ Smith concedes he stated at the time his guilty plea was entered that the plea was voluntary. He now argues that the record shows his plea was the result of his fear of Skeels, the police, and the death penalty. He points to nothing of record, however, which would show that his fear of Skeels influenced him to plead guilty. Nor does he refer to any police action which induced his plea. Fear of the death penalty is a legitimate concern of one charged with capital murder, and a sound reason for choosing to plead guilty to a lesser offense. The threat of the death penalty is not a basis for holding a guilty plea to have been coerced and thus invalid. *See Williams* v. *State*, 273 Ark. 371, 620 S.W.2d 277 (1981).

### 2. Ineffective assistance, failure to make findings

Smith argued that his appointed counsel, Phillip Clay, was ineffective because he visited Smith only a few times during his seven months of confinement prior to pleading guilty and did not explain to Smith the "difference" between a sentence of life imprisonment and one to life without parole.

Clay testified at the Rule 37 hearing that he did not learn of Smith's decision to plead guilty until just before the hearing. He said he advised Smith to plead not guilty, but he could not recall the conversation he and Smith had with respect to the effect of the life sentence which had been offered by the state. He recalled, and the record shows, he asked Smith at the plea hearing if he had in any way guaranteed Smith parole eligibility to which Smith replied he had not.

Smith testified with respect to his understanding, at the time he entered his plea, of the meaning a life sentence as follows:

Phillip Clay informed me that it was something to the effect of twenty-five (25) to thirty-five (35) years, the same as that, that I'd do, that I'd have to make seven . . . then go up before the Parole Board and they could deny me up to three years, a maximum of (5) years and then they would have to release me.

A trial court may conclude from the record that post-conviction relief sought pursuant to Rule 37 should be denied and that no hearing is necessary. Rule 37.3(a) requires written findings specifying the parts of the record which form the basis of the trial court's decision. We have held we may make an exception to the written findings requirement in those cases where our own examination of the record demonstrates conclusively that the trial court was correct in denying relief. *Kain v. State*, 296 Ark. 123, 752 S.W.2d 265 (1988); *Morrison v. State*, 288 Ark. 636, 707 S.W.2d 323 (1986).

In *Rawls v. State*, 264 Ark. 954, 581 S.W.2d 323 (1986), we pointed out the distinction between cases decided pursuant to Rule 37.3(a) where no hearing is held, and we may excuse the failure to make written findings, and those decided under Rule 37.3(c) where a hearing has been held and we may not excuse the failure to make written findings. We held no such findings were necessary in that case because the trial court apparently decided the motion without a hearing. There was no record of a hearing in the transcript of the proceedings. We pointed out, however, that "[w]e have held that written findings must be made whenever an evidentiary hearing is held."

In *Williams v. State*, 272 Ark. 98, 612 S.W.2d 115 (1981), we noted that "[w]e have held without exception that this rule is mandatory and requires written findings," citing *State v. Maness*, 264 Ark. 190, 569 S.W.2d 665 (1978), and *Robinson v. State*, 264 Ark. 186, 569 S.W.2d 662 (1978). In *Bumgarner v. State*, 288 Ark. 315, 705 S.W.2d 10 (1986), we made it clear that the requirement of written findings of fact applies to any issue upon which a Rule 37 hearing is held.

The only writing entered by the trial court in this case is the order denying relief as follows:

The defendant, Travis Smith, was charged by Prose-

cuting Attorney's Information in this Court of Manufacturing Methamphetamines on October 26, 1983 and in case number CR-83-49 with the offense of Capital Murder. On May 11, 1984, the defendant appeared and with his attorney, Philip Clay. The State moved to amend the Capital Murder charge to a reduced charge of First Degree Murder. Said Motion was granted. Further the state moved to amend the information in case number CR-83-47 to reflect the Manufacture of Phenolacetone instead of the Manufacture of Methamphetamine. Said Motion was granted. After the amendment of the information, on Case number CR-83-47, the defendant entered a plea of guilty. Further on the charge of First Degree Murder the defendant entered a plea of guilty. The defendant, at the conclusion of the hearing, was sentenced to the Arkansas Department of Correction in accordance with the State's recommendation and the terms of the negotiated plea. The defendant has filed a Rule 37 petition alleging ineffective assistance of counsel that the prosecuting attorney and the Court had engaged in conduct contrary to Arkansas Law. The defendant's Petition contained thirty-two separate paragraphs or allegations. On September 22, 1987, a hearing was held at which time witnesses testified with respect to the Rule 37 matter including the defendant, Travis Smith.

From an examination of the Petitioner's Rule 37 Petition, the State's Response, transcript of the arraignment, change of plea hearing and the testimony presented at the Rule 37 Petition hearing, the Court is of the opinion that said Petition for Rule 37 Relief is without merit and should be denied.

The court is of the opinion that at the time of the plea, the defendant knowingly and intelligently entered his plea and that the plea was in fact voluntary. There was sufficient factual basis for the Court to accept the plea and the Court so finds.

■ While we might say that the fact that the relief requested was denied by the trial court because his conclusion that the plea was entered "knowingly and intelligently" was a

clear indication that the court disbelieved Smith's version of the facts, such a holding would make a mockery of our rule requiring findings of fact. The court's order is conclusory in nature. No fact findings are made with respect to the effectiveness of counsel. We, therefore, must remand the case either for entry of fact findings in accordance with Rule 37.3(c) or for any further proceedings consistent with this opinion which may be deemed necessary by the trial court.

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissenting.

STEELE HAYS, Justice, dissenting. The majority reverses and remands this case, not for any merit in appellant's several allegations of error, but because it considers the order denying the Rule 37 petition to be insufficient in findings of fact.

Nothing is to be gained by remanding the case. We are not handicapped in the slightest in gauging the pros and cons of the appeal, to which the majority opinion bears witness. It is clear that appellant's arguments are without substance. Nothing in the majority opinion suggests otherwise and the record itself amply demonstrates that appellant was entitled to no relief from his guilty plea.

The trial court granted a hearing on appellant's petition, although the allegations of the petition are patently conclusory. A lengthy hearing was conducted which failed to produce any material basis for relief and at the end of the hearing the trial court recognized that findings were required and advised counsel that his written order would be forthcoming, as it was. The order is reported verbatim in the majority opinion and need not be repeated here. I suppose it could be argued that the order could have gone into greater detail, but given the vagueness of the petition and the generality of the testimony, I cannot agree that it is so deficient as to require reversal, nor has the appellant even attempted to show how greater specificity in the order might have borne on the result.

We have held that if the record conclusively shows that the petition is without merit we will affirm, irrespective of the trial court's failure to make written findings. *Kain* v. *State*, 296 Ark. 123, 752 S.W.2d 265 (1988); *Morrison* v. *State*, 288 Ark. 954,

707 S.W.2d 323 (1986); *Rawls* v. *State*, 264 Ark. 954, 581 S.W.2d 311 (1979). The majority opinion concedes that exception to the requirement of written findings, but limits the exception to those cases where there has been no hearing. It is true that language to that effect appears in *Bumgardner* v. *State*, 288 Ark. 315, 705 S.W.2d 10 (1986), but neither case relied on [*Williams* v. *State*, 272 Ark. 98, 612 S.W.2d 115 (1981), *State* v. *Maness*, 264 Ark. 190, 569 S.W.2d 665 (1978)] supports such distinction. In *Williams*, we merely noted that we could not review the trial court on a lengthy record because there were no findings. In *Maness* we reversed the trial court because there was *no record* from which it could be determined whether the petition had merit.

The thrust of our cases, as I read them, is that with or without a hearing, if we are dependent on findings of fact to provide a meaningful review, then we will reverse if they are wanting. But if we can determine reliably without findings of fact that the petition lacks merit, we will affirm. That approach, I believe is sound and avoids requiring the trial court to reiterate in different language with respect to a record already before us why the petition had no merit. Where we can do that for ourselves, it seems a needless waste of judicial resources to insist that the trial court do it first. It is notable that neither the majority opinion nor the appellant has pointed out any issue of fact or law which is rendered doubtful because of the trial court's order. I would overrule *Bumgardner* v. *State*, and affirm.

HICKMAN, J., and GLAZE, J., join.